IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. WR-73,965-04




EX PARTE SAMUEL RICHMOND WALKER, Applicant




ON APPLICATION FOR A WRIT OF HABEAS CORPUS
CAUSE NO. 943669
IN THE 351ST DISTRICT COURT
FROM HARRIS COUNTY



           Price, J., filed a concurring statement in which KELLER, P.J., joined.

CONCURRING STATEMENT 
           I concur with the Court’s denial of relief in this application for a writ of habeas
corpus. I write separately to address some of the concerns raised by Judge Alcala in her
dissenting statement. I express no opinion as to whether, in the words of the dissenting
statement, “[h]ad defense counsel objected to the back-door hearsay elicited at trial by the
State, the trial court would have erred by permitting the evidence.”


 But even assuming
arguendo that it would have, I do not think that the applicant has met his burden to prove that
his counsel on retrial performed deficiently—nor that, assuming his representation was
deficient, such deficiency prejudiced the applicant.
1. Deficient Performance
           In concluding that counsel retained by the applicant for his robbery retrial performed
deficiently by failing to object on hearsay and Confrontation Clause grounds to the testimony
of Detective Parinello, the dissent seems to place great weight on the fact that initial
counsel’s overruled Confrontation Clause objections resulted in a reversal of the applicant’s
first conviction on appeal.
           But “[e]ven the best criminal defense attorneys would not defend a particular client
in the same way”—and indeed, “[t]here are countless ways to provide effective assistance
in any given case.”


 It is not our task, in other words, to undertake an apples-to-oranges-like
comparison of “Trial Strategy No. 1” to “Trial Strategy No. 2” and determine which strategy
we think preferable.


 Instead, our task is simply to fairly determine whether subsequent
counsel’s strategic decision was “reasonable considering all the circumstances”


—or,
alternatively, whether counsel committed an “error[] so serious that [he] was not functioning
as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”


 When we make this
determination, we are to bear in mind that “[a] fair assessment of attorney performance
requires that every effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct
from counsel’s perspective at the time” the decision was made.


 
           Furthermore, and perhaps most relevant to the question before us, “[s]trategic choices
made after thorough investigation of law and facts relevant to plausible options are virtually
unchallengeable.”


 The Fifth Circuit has said, in this context, that when counsel makes a
“conscious and informed decision on trial tactics and strategy,” that decision should not be
deemed to be constitutionally deficient unless it was “so ill chosen that it permeates the entire
trial with obvious unfairness.”


 This Court has, in addition, noted that when important trial
decisions are made for “strategic reasons,” the fact that those decisions would seem “risky”
or “undesirable to most criminal attorneys” will not suffice to establish deficient performance
under Strickland.


 It is only when “no reasonable trial attorney would pursue such a strategy
under the facts of th[e] case” that this Court may grant relief for an unreasonable strategic
decision that was made after deliberation and under advisement.



           Judging by some of the considerations it identifies as supporting the conclusion that
counsel’s performance was objectively unreasonable, the dissenting statement fails to pay full
and proper heed to the Supreme Court’s admonition regarding the “distorting effects of
hindsight.” Specifically, in its discussion of counsel’s alleged deficiencies, the dissent finds
it significant that “[t]he State ran with [Parinello’s] hearsay, essentially arguing in its closing
statement that the probability that applicant did not commit this offense was one in four
million.”


 The dissent also concludes from a review of the record that “the jury gave
significant weight to Dangerfield’s statements that ‘Low Down’ gave her the complainant’s
stolen property.”


 But each of these considerations is utterly irrelevant in determining the
extent of counsel’s deficiency as of the time of his decision. Of course, we now know that
counsel’s trial strategy failed—his client was, after all, convicted. However, we cannot say
on the basis of either of these considerations that his strategy was ex ante unreasonable.
           Focusing on the consideration that is relevant to the issue of whether or not counsel
performed deficiently—that counsel chose not to object on hearsay or Confrontation grounds
despite his knowledge of former counsel’s (ultimately vindicated) decision to do so—I
conclude that the applicant has failed to carry his burden to prove that counsel’s decision was
“so ill chosen” as to “permeate[] the entire trial with . . . unfairness.”


 The applicant does
not point to anything in the record that suggests that counsel’s strategy (which was,
apparently, to suggest that the State went down a “rabbit trail” in investigating the applicant
when it relied upon the “ridiculous” story provided by a self-serving arrestee) was illogical,
implausible, or patently doomed from the outset to failure. He does not argue it would be
unreasonable for an attorney, in the exercise professional judgment, to think that the
identification testimony of the complainant’s son, if potentially questionable, might still be
enough to convince a jury to convict—and that in order to counter this evidence, it would be
necessary to proactively suggest that the State had investigated and implicated the wrong
man. And he does not explain why it is that no reasonable trial attorney would conclude, as
did counsel, that the rewards of such an approach might outweigh the risks—nor why a
miscalculation in this regard would constitute an “error[] so serious that counsel was not
functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”



           Instead, the applicant (rather conclusorily) states that his counsel “knew or should
have known” to object to the hearsay testimony, given the outcome of the applicant’s first
direct appeal. But this bare assertion effectively begs the question: Given that counsel knew
the testimony was objectionable, was it nevertheless unreasonable for him to make the
decision to admit it without objection?


 The applicant fails to explain why it was. In light
of this, I cannot conclude that the applicant has carried his burden to prove by a
preponderance of the evidence that his attorney’s conduct fell below an “objective standard
of reasonableness.” On this basis alone, I would concur with the Court’s decision to deny
this application for writ of habeas corpus.
2. Prejudice
           But I also believe that the Court’s decision to deny relief on the applicant’s
ineffective-assistance claim is justified by the applicant’s failure to show prejudice. The
dissenting statement identifies three considerations that would arguably support a finding that
the applicant suffered prejudice at the hands of his trial counsel: (1) counsel’s claim that he
“spoke with at least two jurors who told [him] that [Parinello’s] testimony was the deciding
factor in convicting” the appellant


; (2) that the jury “requested and was permitted to review
Parinello’s testimony that the computer database matched applicant to ‘Low Down[]’”


; and
(3) that the only evidence to link the applicant to the offense (aside from the objectionable
hearsay testimony) was the “unreliable” identification by the complainant’s son.


 
Respectfully, I do not think that these considerations suffice to establish by a preponderance
of the evidence that there is a “reasonable probability” that the verdict would have been
different absent counsel’s decision to allow Parinello’s testimony without objection.
           As to the first of these considerations, I note that we are never to take these kinds of
juror impact statements into account in determining the legality of a conviction.


 Difficult
though it may be to unring this bell, the Rules of Evidence make clear that we are not to
consider any statement by a juror as to the “effect of anything on any juror’s mind or
emotions or mental processes, as influencing any juror’s assent to or dissent from the verdict
or indictment.”


 As to the second of these considerations, I am not convinced that the fact
that the jury requested to review Parinello’s testimony cuts in favor of either conclusion (that
is, that the applicant was either prejudiced or not prejudiced). All we know is that the jury
requested to review this testimony; we do not know that this request was made so that the
jury might weigh the testimony in favor of conviction. It seems to me that any further claim
about the import of the jury’s request is largely speculative—and is, as a result, not
particularly probative.
           With respect to the sole consideration that is probative as to prejudice (i.e., the balance
of the evidence aside from the out-of-court identification), I note that the jury was presented
with conflicting accounts of Erik’s relative levels of confidence in his identification of the
applicant and his ability to recall the numbers of the license plate. On direct examination of
the circumstances under which he attempted to ascertain the license plate of the getaway car,
Erik testified as follows: “I got -- I think I got the last two numbers and my brother got like
the first four numbers or the first letters or numbers.” On cross-examination, Erik responded
affirmatively to the following question by defense counsel: “When you chased after the
vehicle, you and your brother, and you got the partial license plate and wrote it down, were
you sure that that was the right number?”


 While this portion of the record is arguably
consistent with the notion that Erik’s “certain” identification of the applicant was just as
questionable as his “certain” recall of the license plate, it is also consistent with the notion
that Erik was certain of the portion of the license plate that he—rather than his brother—was
able to recall. And given that Detective Parinello never testified as to which characters of
the license-plate number were inconsistent with the actual license plate of the red Ford
Focus, the jury was never actually given any indisputable evidence that the portion of the
license plate that Erik provided was wrong. 
           In other words, the jury could have reasonably inferred exactly what the dissenting
statement apparently concludes: that Erik’s identification of the applicant was both “shaky”
and “unreliable.”


 But it was not bound to make that inference. It could just as reasonably
have inferred that Erik’s identification of the applicant was in no way tarnished by the fact
that the license-plate number provided to the detective by Erik and his brother turned out to
be wrong. On the face of this record these inferences stand in equipoise. That being the
case, and given that it is the applicant who bears the burden to prove prejudice by a
preponderance of the evidence, this equipoise bodes poorly for the applicant’s claim—it
means that the possibility that the jury discounted Erik’s testimony and convicted instead on
the basis of Parinello’s hearsay testimony is merely “conceivable.”


 Without some
additional showing by the applicant of why the remainder of the habeas-record evidence
would move the needle (so to speak) from equipoise to a “preponderance of the evidence,”
I cannot conclude that the fact that the jury might have had doubts about the accuracy of
Erik’s identification is sufficient to “undermine confidence in the outcome” of the applicant’s
trial.


 Accordingly, I do not think the applicant has carried his burden to prove prejudice.



CONCLUSION
           For an applicant to obtain relief, in a post-conviction application for writ of habeas
corpus, on a claim that he received ineffective assistance from his trial counsel, the applicant
bears the burden to show, by a preponderance of the evidence, “that his counsel's
performance was deficient and that there is a ‘reasonable probability’—one sufficient to
undermine confidence in the result—that the outcome would have been different but for his
counsel's deficient performance.”


 Reviewing the habeas record before me, I do not believe
that the applicant in this case has met his burden to show either of these elements. In light
of this, I concur with the Court’s denial of relief in the instant application for writ of habeas
corpus.

FILED: MARCH 12, 2014
PUBLISH